IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., ARISTA MUSIC, ARISTA RECORDS LLC, BAD BOY RECORDS LLC, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., ROC-A-FELLA RECORDS, LLC, SONY MUSIC ENTERTAINMENT US LATIN LLC, and ZOMBA RECORDING LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SPINRILLA, LLC and JEFFERY DYLAN COPELAND,<br><br>Defendants. | Civil Action No.<br>1:17-CV-00431-AT |

**SURREPLY IN FURTHER OPPOSITION TO DEFENDANTS'**
**FIRST MOTION FOR SUMMARY JUDGMENT**

Defendants do not deny that, according to their own records, Spinrilla was rife with infringement, and that nearly 100,000 sound recordings that Defendants eventually disabled from Spinrilla as infringing were downloaded and streamed *billions* of times. Those facts alone are more than sufficient to defeat Defendants' first motion for summary judgment. Instead, in their reply brief, Defendants resort to new (and incorrect) arguments, misstatements, and mischaracterizations in an effort to distract from the undeniable—*i.e.*, that Plaintiffs' works-in-suit were among the nearly 100,000 sound recordings that Defendants themselves identified as infringing. Even if taken as true, Defendants' new arguments, misstatements, and mischaracterizations do not remotely show that Defendants are entitled to summary judgment.

Defendants make three new arguments, none of which has merit. First, Defendants assert—without citation to legal authority—that a plaintiff in a copyright infringement lawsuit can prove infringement only by using expert testimony. Dkt. 183 at 3-4, 17. That argument is incorrect as a matter of law. Defendants do not point to a single case where a court required expert testimony to establish infringement of copyrighted sound recordings, nor can they do so. And although Defendants "presume[]" what "these Plaintiffs have done in other cases," *id.* at 3), Defendants' presumption is simply wrong. Plaintiffs often use automated

fingerprinting technologies like Audible Magic to identify infringing copies of their sound recordings, and that evidence is readily accepted by courts (see below).

Second, and relatedly, Defendants assert—again without citation to legal authority—that automated fingerprinting technologies like Audible Magic cannot be used to prove infringement. *Id.* at 12-13. That argument is directly contradicted by all of the relevant case law. *E.g.*, *Capitol Records, Inc. v. Escape Media Grp., Inc.*, Case No. 12–CV–6646, 2015 WL 1402049, *23-24 (S.D.N.Y. Mar. 25, 2015) (collecting cases); *UMG Recordings, Inc. v. Escape Media Grp., Inc.*, Case No. 11 Civ. 8407, 2014 WL 5089743, at *17 (S.D.N.Y. Sept. 29, 2014) ("Audible Magic is a vendor that has been repeatedly used in entertainment copyright cases and thus, its methods are well-known to those within the entertainment industry. In short, Audible Magic's methods of analysis are not a secret and have been relied upon in various similar copyright litigations." (citations omitted)).[1] Indeed, Defendants' argument contradicts the opinions of Defendants' own expert, Dr. John Strawn,

---

[1] Defendants' argument is also contrary to representations Defendants' counsel made to the Court regarding Audible Magic (Aug. 18, 2017 Hr'g Tr. 10:1-12; Sept. 19, 2017 Hr'g Tr. 34:8-12).

regarding Audible Magic's accuracy in detecting infringements. Doroshow Decl. Ex. 3 (Strawn Report §§ 9.5-9.7).[2]

Third, Defendants assert—yet again without legal authority—that relying on computer-generated materials like Audible Magic scan results is inadmissible hearsay. Dkt. 183 at 14-17. But that argument is incorrect as a matter of law. It is well settled that computer-generated materials, like Audible Magic results, are not hearsay because they are not a "statement" within the meaning of the Federal Rules of Evidence. *BMG Rights Mgmt. LLC v. Cox Commc'ns*, 881 F.3d 293, 313 (4th Cir. 2018); *see also United States v. Bates*, 665 F. App'x 810, 814 (11th Cir. 2016).

The misstatements and mischaracterizations in Defendants' reply brief are even more numerous. As set forth below, Defendants distort the record, ignore the facts, and contradict their own expert's testimony.

First, Defendants mischaracterize the process Plaintiffs followed to identify infringing copies of the 2,083 works in suit, in an apparent effort to deny that the works in suit were, in fact, infringed. Defendants describe the process as "(m)erely indicating that some unknown and unidentified population of songs on Spinrilla were matched to one or more sound recordings in Audible Magic's database." Dkt.

---

[2] Plaintiffs reserve the right to have Dr. Strawn's testimony excluded for violating Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702 (*Daubert*).

3

183 at 7. That is not what Plaintiffs did, as the declaration of Jeremy Landis makes clear. Dkt. 177-8. Plaintiffs used Audible Magic to match each individual work in suit to specific, individually-identifiable infringing copies of sound recordings that were on Spinrilla, and all of those copies were produced to Defendants in their entirety long ago. *Id.* ¶ 6; *see also* Dkt. 177-1 at 3-5. Try as they might, Defendants cannot dismiss that process, which is unassailable.

Second, Defendants mischaracterize Plaintiffs' testimony about Audible Magic's accuracy by claiming Plaintiffs conceded that "false positives occurred"— *i.e.*, that Audible Magic identified a sound recording as infringing one of Plaintiffs' copyrighted works when in fact the sound recording did not infringe. Dkt. 183 at 13. But that is incorrect. In fact, while Plaintiffs testified that Audible Magic sometimes results in false *negatives*—*i.e.*, the failure to identify an audio file that is, in fact, infringing—they did not testify that false *positives* occur. There is absolutely no support for Defendants' notion that Audible Magic results in false positives. To the contrary, ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████████
█████████████████████████████████████.[3]

Third, Plaintiffs incorrectly claim that, "[i]n discovery, Spinrilla asked Plaintiffs to produce [certain] Audible Magic scan results and Plaintiffs refused." Dkt. 183 at 8-9. That claim is demonstrably false. As the November 16, 2017 email excerpted in Defendants' reply brief makes plain, Defendants did not request any Audible Magic scan results until well *after* the close of fact discovery, and never sought to compel their production. See L.R. 37.1(B) (requiring motions to compel to be filed before the close of discovery). Nor could Defendants justify their alleged need for these scan results, because Plaintiffs already produced to Defendants all of *the actual infringing copies* of the sound recordings they had downloaded from Spinrilla. If Defendants truly wanted the scan results, they could easily run their own scans of those audio files against the very same Audible Magic database to obtain exactly the same information (which they already had). Moreover, even

---

[3] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

though Defendants could show no need for the scan results (because they already had the actual infringing audio files themselves), and even though Defendants had never requested any scan results before the close of discovery, Plaintiffs nevertheless proposed an exchange of the scan results for information that Defendants had been improperly withholding. Defendants simply ignored Plaintiffs' proposal and never pursued the matter further. *See* Doroshow Decl. Exs. 1-2.[4]

Fourth, Defendants mischaracterize as "lawyer chatter" Defendants' own admissions that the 98,675 sound recordings they disabled from Spinrilla were infringing. Dkt. 183 at 11. But Defendants' wordsmithing cannot avoid their admissions that these sound recordings were identified by Audible Magic as infringing. That is why Defendants disabled them (although not until after they had

---

[4] In any event, Defendants' belated request in November 2017 has nothing to do with the Audible Magic scans that Mr. Landis conducted in December 2017, after Defendants finally produced copies of the 98,675 sound recordings that they had removed from Spinrilla as infringing. It is hardly Plaintiffs' fault that Defendants refused to produce these infringing sound recordings until mid-December, 2017, well after the close of fact discovery and on the cusp of the end-of-year holidays. Notably, Defendants to date have never produced their own Audible Magic scan results for these belatedly-produced sound recordings, nor have they ever requested Plaintiffs' Audible Magic scan results for these sound recordings. Thus, Defendants' argument for Rule 37(c) sanctions is as frivolous as it is hypocritical. Dkt. 183 at 9.

6

already been downloaded and streamed hundreds of millions of times). Defendants make a similar admission in their reply. *Id.* at 12.

Fifth and finally, Defendants try to discredit the declaration of Mr. Landis, presumably because they understand that the Landis Declaration is fatal to their summary judgment motion. In addition to the wrongheaded assertion that Mr. Landis's reliance on Audible Magic results is hearsay (see above), Defendants mischaracterize the declaration as filed "late," and suggest that Mr. Landis is not experienced enough to use Audible Magic. Dkt. 183 at 13-14, 16-17. Those arguments are frivolous. Mr. Landis' declaration was timely filed with Plaintiffs' opposition, and Mr. Landis explained therein that he regularly uses Audible Magic to detect infringement as part of his job responsibilities. More fundamentally, if Defendants had any genuine question about Mr. Landis's use of Audible Magic (which they do not, having already deposed Mr. Landis at length on this very subject), they were always free to run the actual infringing MP3 files—which Plaintiffs produced to Defendants long ago—through Audible Magic themselves to confirm whether those files contain the sound recordings that Plaintiffs say they do.[5]

---

[5] Defendants' invocation of the best evidence rule is also meritless. Dkt. 183 at 15. As noted above, the copies of the sound recordings themselves are the best evidence of the Audible Magic matches, and those are all in Defendants' possession. In any

## CONCLUSION

For the reasons stated herein and in Plaintiffs' opposition brief (Dkt. 178), Defendants' First Motion for Summary Judgment should be denied.

March 8, 2018                                       Respectfully submitted,

/s/ Kenneth L. Doroshow
JENNER & BLOCK LLP
KENNETH L. DOROSHOW
(Admitted Pro Hac Vice)
SCOTT B. WILKENS
(Admitted Pro Hac Vice)
PREVIN WARREN
(Admitted Pro Hac Vice)
1099 New York Ave., N.W. Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

AVA U. MCALPIN
(Admitted Pro Hac Vice)
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

TROUTMAN SANDERS LLP
JAMES A. LAMBERTH

---

event, "Rule 1002 requires production of an original document only when the proponent of the evidence seeks to prove the content of the writing. It does not, however, require production of a document simply because the document contains facts that are also testified to by a witness." *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994) (citations omitted).

8

james.lamberth@troutmansanders.com
Georgia Bar No. 431851
600 Peachtree Street, N.E.
Suite 5200, Bank of America Plaza
Atlanta, GA 30308-2216
Telephone: (404) 885-3362
Facsimile: (404) 962-6611

*Attorneys for Plaintiffs*

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

I, Kenneth L. Doroshow, an attorney, hereby certify that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt.) which is approved by the Court pursuant to Local Rule 5.1(C) and 7.1(D).

                                                                   */s/ Kenneth L. Doroshow*
                                                                   KENNETH L. DOROSHOW

## CERTIFICATE OF SERVICE

I, Kenneth L. Doroshow, an attorney, hereby certify that on this 8th day of March 2017, Plaintiffs' Surreply in Further Opposition to Defendants First Motion for Summary Judgment was electronically filed with the Clerk of Court using the CM/ECF system, which automatically and contemporaneously sends electronic notification and a service copy of this filing to all counsel of record who have appeared in this matter.

                                                                   */s/ Kenneth L. Doroshow*
                                                                   KENNETH L. DOROSHOW