IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ATLANTIC RECORDING CORPORATION, *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: |
| v. | ) ) | 1:17-CV-0431-AT |
| SPINRILLA, LLC, *et al.,* | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND EXHIBIT A TO THE AMENDED COMPLAINT (DKT. 194)

Plaintiffs have moved for leave to add "approximately 2,000" more sound recordings to their list of allegedly infringed works.  Defendants oppose Plaintiff's request as follows:

## I.    Introduction

It is *too late* for Plaintiffs to make their proposed amendment. In their Motion for Leave (Dkt. 194), Plaintiffs request to add approximately 2,000 additional sound recordings to the list of works in suit, attached as Exhibit A to the Amended Complaint (Dkt. 127), over five months after the close of discovery. (*See* Dkt. 194, p. 2). In so requesting, Plaintiffs conclude that they should be granted leave to amend because "any delay in seeking this amendment is due entirely to

1

Defendants'…belated production of the 98,675 sound recordings that Defendants had hidden from public [ ] view." (*See* Dkt. 194, p. 2). However, Plaintiffs are incorrect. Leave should be denied because Defendants production was timely and the addition of 2,000 more works in suit, over five months after the close of discovery, severely alters the value of this case, changes Defendants' liability assessment, and greatly prejudices Defendants.

## II.   <u>Standard for Amending a Complaint</u>

The Court is not required to grant leave to amend. (Fed. R. Civ. P. 15(a)(2); *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999)(holding the courts liberal discretion to deny amendment is not abused when the amendment would prejudice the defendant, follows undue delays, or is futile.)). While "[t]he court should freely give leave to amend when justice so requires;" courts have "extensive discretion" in deciding whether to grant leave to amend and may choose not to allow an amendment "when [it] would prejudice the defendant, follows undue delay or is futile." (Fed. R. Civ. P. 15(a)(2); *Campbell*, 166 F.3d at 1162)("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided"); *see also Abramson v. Gonzalez*, 949 F.2d 1567, 1581 (11th Cir.1992) (holding "that the district court did not abuse its discretion in denying the plaintiffs' motion to amend" because

"numerous grounds for denial . . . existed here, including undue delay, undue prejudice to the defendants, and futility of the amendment")).

A trial court also has considerable leeway and inherent authority to manage its own docket. (*Rance v. Rocksolid Granit USA, Inc.*, 489 F. App's 314, 316 (11th Cir. 2012) (District courts have authority to manage its own docket and have "broad discretion in deciding how best to manage the cases before them"); (*Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) ("A district court has inherent authority to manage its own docket so as to achieve the orderly and expeditious disposition of cases").

## III.   **Argument and Authorities**

### A.   Plaintiffs' Proposed Amendment Will Prejudice Defendants By Significantly Altering the Value of this Case

Plaintiffs should not be permitted to again amend Exhibit A to their Amended Complaint (Dkt. 127 and 127-1) because, for one reason, doing so would significantly alter the value of this case which, in turn, prejudices Defendants.

Defendants have defended this case proportionate to the amount in dispute. Defendants have created a litigation plan, engaged in discovery, prepared motions, and defended this case in a way appropriate for the potential damages at issue based on Plaintiffs' original February 3, 2017 claim to 210 works in suit (Dkt. 1) and later

based on Plaintiff's amended September 11, 2017 (Dkt. 72)[1] claim to 2,100 works in suit (Dkt. 127 and 127-1). In fact, after Plaintiffs' September 2017 amendment, Defendants brought this concern to the Court because Plaintiffs' Amended Complaint continued to refer to the 2,100 works in suit as an open-ended, "illustrative" list of the allegedly infringed works. Specifically, at the September 19, 2017 hearing, Defendants noted that it was their understanding the Court ordered Plaintiffs (in Discovery Hearing Order, Dkt. 58) "to file a *final* list of infringed works by September." (Transcript of Sept. 19, 2017 Hearing at 46:3-13 (emphasis added))[2].

A "final" list was needed because only by knowing the number of works allegedly infringed can Defendants understand their potential damages number.[3] Also, the number of works allegedly infringed greatly impacts the liability analysis, as discussed in Section B below. At the September hearing, the Court, acknowledged

---

[1] The Complaint was amended again on October 19, 2017 (Dkt. 127) (twelve days before the close of discovery on October 31,2017 as Ordered by the Court via Dkt. 58); however, the number of songs in suit was not altered by Plaintiff's October 19 amendment.

[2] Excerpts from the September 19, 2017 Hearing are attached as Exhibit C.

[3] Plaintiffs are likely to seek statutory damages under the Copyright Act, which permits damages for each work allegedly infringed. (17 U.S.C. § 504). Statutory damages can range from $750 to $30,000 for each work infringed and may increase to $150,000 for each work infringed if willfulness is shown. (*Id.*) By adding 2,000 more works in suit, long after the close of discovery, Plaintiffs seek to increase the potential value of this case twenty-fold from their initial Complaint (Dkt. 1) and double from their Amended Complaint (Dkt. 127).

the prejudice that would result from a late addition of infringed sound recordings to Plaintiff's Amended Complaint. The Court stated:

> I'm not going to just say that you could – that you can proceed based on liability on 2100 and then go to a damages portion of a trial and suddenly add 200,000. That violently changes the scope of the case. So I think your folks need to be thinking about it…if Spinrilla is as still moderate in size and financial profitability as represented…they ought to know what your case is about and really understand the magnitude of the case for purposes of resolution.

(Transcript of Sept. 19, 2017 Hearing at 55:1-21).

Despite the Court's warning, Plaintiffs now attempt to double the number of sound recordings allegedly infringed from around 2,100 to 4,000. This considerably alters the magnitude of the case and Defendants' potential liability—*over five months after the close of discovery*.

Consistent with Rule 26 of the Federal Rules of Civil Procedure, Defendants conducted discovery in a means that is:

> proportional to the needs of the case, *considering the importance of the issues at stake in the action, the amount in controversy*, the parties' relative access to relevant information, the parties' resources, *the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

(Fed. R. Civ. P. 26 (emphasis added)).

Again, Defendants defended this case, for the majority of the time, based on it being about 210 infringed sound recordings, then, one moth prior to the close of discovery, based on the case being about 2,100 sound recordings. Since discovery

ended over five months ago, Plaintiffs should not be allowed to materially alter this case and force Defendants to defend a case involving more than 4,000 sound recordings.

B.   Amending the Number of Works At Issue
      from 210 to 4,095 Materially Alters the Issue of Liability

The prevalence of infringement on a defendant's website is one of the factors considered when determining liability for indirect copyright infringement. The Eleventh Circuit has held that a defendant will not be liable for contributory infringement where the product in question is capable of substantial noninfringing uses or *is widely used for legitimate and unobjectionable purposes*. (*See Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990)). The determination that a product is capable of substantial noninfringing use involves assessing the pervasiveness of infringement. (*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) (holding that the question of contributory liability turns on whether the Betamax is capable of commercially significant noninfringing uses). In reversing the Ninth Circuit, the Supreme Court in *Sony* highlighted a survey of owners who predominately articulated their primary use of the product was "recording a program to view at a later time, and thereafter erasing it." (*Sony Corp. of Am.*, 464 U.S. at 423). This survey greatly demonstrating significant noninfringing uses affected the Court's analysis of liability. (*See also, Cambridge Univ. Press v. Becker*, No. 1:08-CV-1425-ODE, 2010 WL 11507617, at

6

*12 (N.D. Ga. Sept. 30, 2010), *order clarified on reconsideration*, No. 1:08-CV-1425-ODE, 2010 WL 11508001 (N.D. Ga. Dec. 28, 2010) (holding "[h]ere, the evidence indicates that ERes and uLearn have significant noninfringing uses. They can be used to facilitate distribution of materials protected by fair use. They can be used to digitally distribute works for which Georgia State owns licenses. They can also be used to distribute copyrighted works with permission from the copyright holders. They can be used to distribute original materials created by the instructors or materials for which the instructors or the university owns copyrights. uLearn allows instructors to utilize a wide range of 'tools' to manage their courses, such as discussion forums, quizzes, and announcement pages."))

Thus, the proportionality and extent of alleged infringement across the Spinrilla service is directly related to liability. Permitting Plaintiffs to add an additional 2,000 sound recordings to the number of works at issue (after already adding approximately 1,900 works one month prior to the close of discovery (Dkt. 72)) materially alters the indirect infringement analysis. Defendants have been defending this case, the majority of the time, with the understanding that Plaintiffs were complaining that 210 songs out of the 1.3 million songs on the Sprinilla service were owned by Plaintiffs and published without permission. That means that Plaintiffs made no claim to 99.9998% of the songs on Spinrilla. In September 2017, Plaintiffs amended that number to 2,100 songs, which Defendants operated under until the

close of discovery on October 31, 2017. Doubling the number of sound recordings allegedly infringed more than five months after the close of fact discovery puts Defendants in an unfair position.

C.     Plaintiffs' Amendment is Untimely Because Fact Discovery Is Closed

While the Federal Rules state that "court[s] should freely give leave when justice so requires," "a motion to amend may be denied on numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment." (Fed.R.Civ.P. 15(a)(2), *Carruthers v. BSA Advert, Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004). Specifically, "it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions." (*Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002)). Such "[p]rejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided." (*Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999)). District Courts routinely hold and were affirmed on appeal when the District Court denied a motion for leave to amend when the motion was filed three months after the close of discovery. (*Thurmond v. Bayer Healthcare Pharmaceuticals, Inc.*, 649 Fed. Appx. 1003, 1006 (11th Cir. 2016)) (holding that "the district court did not abuse its discretion by denying leave to amend this late in the process" when the motion was filed "three

8

months after the close of fact discovery"); (*Tatum v. SFN Group, Inc.*, 698 Fed.Appx. 1000, 1010 (11th Cir. 2017)) (district court did not abuse its discretion by concluding movant did not show good cause to amend complaint when motion for leave to amend complaint was filed three months after discovery closed). In addition, even a one-month delay in filing a motion for leave to amend was held to be too late. (*S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1242-43 (11th Cir. 2009)) (holding that a one-month delay before moving to amend "waited too late" and "dallied too long"). Finally, "[i]t is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid an impending adverse summary judgment." (*Lowe's Home Centers,* 313 F.3d at 1315 (11th Cir. 2002)).

Permitting Plaintiffs' proposed amendment would necessitate additional fact discovery by Spinrilla. Plaintiffs seem to believe the Court and Defendants should assume that infringing copies of the newly identified sound recordings were available on Spinrilla, but that assumption should not be made. In fact, ownership, registration, and copying of these sound recordings are all part of Plaintiffs' *prima facie* case. (*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (holding that to make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in a work and (2) defendants copied protected elements from that work); (*see also* 17 U.S.C. § 411) ("no civil action for

infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made…").

If Plaintiffs' proposed amendment were allowed, Defendants would need to be given the opportunity to meaningfully challenge Plaintiffs' assertions of ownership, registration and, most importantly, that infringing copies of these sound recordings were available on Spinrilla. And Spinrilla cannot meaningfully challenge those assertions without fact discovery. Discovery would be needed on at least these topics:

● where on Spinrilla were each of the allegedly infringing copies (Spinrilla should be allowed to listen to those audio files)[4];

● where on Spinrilla did Plaintiffs locate country music, which was allegedly uploaded, and which is very unlikely present on Spinrilla's hip-hop music site;

● how did Plaintiffs determine that audio on Spinrilla infringed each of these 2,000 sound recordings (Spinrilla should be allowed to probe the reliability of the

_____

[4] Also, Plaintiffs failed to include a URL for any of the additional 2,000 songs (or the original 200 (Dkt. 1) or amended 2,100 (Dkt. 127-1)). The URL would convey to Spinrilla where on Spinrilla's platform (allegedly) each of the allegedly infringing copies are located. This would, in turn, allow Spinrilla to know each specific audio file on its platform which is being challenged by Plaintiffs. Plaintiffs provided URLs in responding to Defendants' interrogatories (a sample of such response is attached as Exhibit A to this Opposition). Since Plaintiffs failed to include this in their proposed Exhibit A to the Complaint (Dkt. 194-2), Spinrilla is forced to get this information through discovery.

method Plaintiffs employed to and related evidence. Spinrilla should also be entitled to know what proof or evidence Plaintiffs will present at trial (or at summary judgment) to support their claim that copies of these 2,000 sound recordings were available on Spinrilla).

● what evidence is there that these 2,000 sound recordings are actually owned by one of the Plaintiffs

● what evidence is there that these 2,000 sound recordings are registered with the United States Copyright Office[5] and, if registered, whether the registered version is the same version that was allegedly available on Spinrilla's website.

● Defendants have worked directly with some of the artists listed for the additional 2,000 sound recordings, what evidence is there that these sound recordings were not uploaded with artist or label permission; and

● why Plaintiffs have not sent takedown notices for any of the 2,000 additional sound recordings?

Re-opening fact discovery – even if limited to the topic of these 2,000 additional sound recordings – would set this case way back. Fact discovery ended on October 31, 2017 and, given the volume of sound recordings Plaintiffs are

---

[5] As the Court is aware, no lawsuit for infringement of a work's copyright can be brought unless that work is first registered with the United States Copyright Office (or unless registration was sought and denied). (17 U.S.C. § 411(a)).

seeking to add, Spinrilla would need at least 90 days of additional fact discovery in connection with the 2,000 newly added sound recordings. Defendants would be prejudiced by prolonging this litigation further and by the costs and attorney fees of conducting this additional fact discovery.

Furthermore, Plaintiffs admit they received the audio files from Spinrilla in December 2017 yet fail to explain why they waited until April 2018 to move to amend their Complaint. While it certainly takes time to evaluate those audio files, given Plaintiffs' collective resources as the largest record labels in the world, they should have completed their evaluation quicker than four months. Similarly, Plaintiffs never asked to stay the litigation for the purpose of evaluating those audio files.

### D.   The Court Previously Considered Other Amendments by Plaintiffs

As mentioned above, Defendants raised their concern that Plaintiffs would attempt to add sound recordings to the Complaint after the close of discovery. At the September 19, 2017 hearing, the Court appreciated Defendants' concern and noted that it was not inclined to permit Plaintiffs never-ending amendments to the number of works at issue. (Transcript of Sept. 19, 2017 Hearing at 55:1-21). Aware of the prejudice that could be caused by a late amendment to Exhibit A, the Court expressly stated that it would not permit Plaintiffs to "violently" change the scope of this case at the last hour because Defendants have a right to know what Plaintiffs' "case is

about and really understand the magnitude of the case for purposes of resolution."
(Transcript of Sept. 19, 2017 Hearing at 55:1-21). In accordance with the Court's
prior Order, Plaintiffs should be denied further amendments to Exhibit A.

     E.    <u>Defendants' Allegedly "Belated" Production Was Timely</u>

Finally, Plaintiffs' attack, at length, the timeliness of Defendants' production
of audio files made inaccessible from the Spinrilla service. (Plaintiff's Brief, pp. 3-
6 [Dkt. 194-1]). One of Plaintiffs arguments is that "Defendants' very belated[ly]"
produced audio files to Plaintiffs. (Plaintiffs' Brief, p. 2 (Dkt. 194-1)]. Plaintiffs'
contend the audio files Defendants produced in December 2017 "clearly fell within
the scope of Plaintiffs' April 21, 2017 Requests for Production of Documents."
(Plaintiffs' Brief, p. 4 [Dkt. 194-1]). Despite Plaintiffs efforts at mischaracterization,
Defendants produced a list of the inaccessible songs and copies of these sound
recordings in a timely manner.

Plaintiffs cannot use the timing of Defendants production as an excuse.
Plaintiffs' Requests for Production of Documents sought to obtain as much of
Spinrilla's database as possible (to which Defendants objected and were forced to
seek relief from the Court). Defendants' objections to Plaintiffs' expansive requests
were brought before the Court in August and September 2017, and the Court ruled
that although the Plaintiffs want the entirety of Defendants' database, servers, and

other proprietary information, Plaintiffs are not entitled to it because it is not discoverable. (Transcript, September 19, 2017 Hearing, 10:11-24).

As a less invasive means of gaining insight into the operation of the Spinrilla service and narrowing Plaintiff's discovery requests, on August 28, 2017, the Court granted Plaintiffs permission to take a 3-hour deposition of Mr. Copeland, focused on Spinrilla's source code, database, and other proprietary information, in addition to all other depositions permitted by the Federal Rules of Civil Procedure. (Transcript of Sept. 19, 2017 Hearing at 31:2-32:16). However, Plaintiffs caused further delays in obtaining the information they sought by failing to take the "source code" deposition of Mr. Copeland until October 2, 2017. This failure was noted by the Court at the Parties' September 19, 2017 hearing. The Court specifically asked:

```
 9          THE COURT:  Well, let me ask you this.  Given the
10   intensity of your concerns in this area and even if it is not
11   focused on Audible Magic but just trying to understand the
12   operation of the system, why aren't you taking Mr. Copeland's
13   deposition earlier?
```

(Transcript of Sept. 19, 2017 Hearing at 31:9-13).

The Court further noted Plaintiffs failure to obtain information regarding Defendants' database and system operation, despite the Court's grant of a 3-hour "source code" deposition of Mr. Copeland on August 28, 2017, when it stated:

14

```
1              THE COURT:  Right.  But what I'm saying is that I
2    gave you sort of basically the opportunity to do an initial
3    deposition to basically satisfy some of your concerns and also
4    provide the defendants with a mechanism for explaining their
5    position to you in greater detail.  But you decided not to take
6    advantage of that also.
7              MR. DOROSHOW:  I guess we misunderstood Your Honor's
8    intention on that.  And I apologize for that.
```

(Transcript of Sept. 19, 2017 Hearing at 32:1-8).

It was not until October 4, 2017 that Plaintiffs finally came to their senses and narrowed their discovery from (1) a request for all database information for every sound recording ever uploaded to the Spinrilla service since its inception, to (2) a request merely for database information identified by Mr. Copeland during his deposition for the sound recordings disabled from the Spinrilla service. (*See* Exhibit B—email exchange between counsel for the Parties filed provisionally under seal). And even then, counsel for the Parties disputed what exact database information should be produced. (*See* Exhibit B). Thus, it was not until November 6, 2017, that the Parties finally agreed on an acceptable scope for Plaintiffs' request. (*See* Exhibit B). Defendants produced an initial spreadsheet containing database information for the disabled audio files on October 30, 2017, a revised spreadsheet per the Parties' agreement on November 6, 2017, and produced the audio files themselves, as quickly as they could, which was December 14, 2017. (*See* Exhibit B).

Additionally, as discussed in Defendants' Motion for Sanctions and Brief, had Plaintiffs not hidden the RIAA data, everyone (*i.e.*, Spinrilla and the Court) would have known what information Plaintiffs did and <u>did not</u> have, and Spinrilla could have produced that particular subset of information to Plaintiffs. (Supp. Mot. For Sanctions, pp. 8-9 [Dkt. 114]). Instead, Plaintiffs hid the RIAA data, claimed they had "only what we can find through manually searching," and demanded to obtain essentially Spinrilla's entire database and source code. (Mot. For Sanctions, pp. 12-17 [Dkt. 98-1]; Supp. Mot. For Sanctions, pp. 8-9 [Dkt. 114]). In turn, as formerly stated, Spinrilla resisted that broad discovery, the Court narrowed some of Plaintiffs' discovery requests, and the Court gave Plaintiffs the opportunity to take the "source code" deposition of Spinrilla. (*See generally*, Discovery Hearing Order, pp. 3-14 [Dkt. 58]).

Plaintiffs' lie that "only Spinrilla has this information" all but derailed this case. Plaintiffs claim of "not having" this information caused numerous discovery disputes and supposedly supported their demands for invasive discovery from Spinrilla. Plaintiffs have claimed on numerous occasions that this alleged lack of data justified their request to (1) access Spinrilla's source code (Transcript of 08/16/2017 Hearing, pp. 8:11-20; 13:24-14:2); (2) access the entirety of Spinrilla's database (Transcript of 08/16/2017 Hearing, pp. 39:23-40:4 and Transcript of

09192017 Hearing, pp. 9:25-10:17); (3) have the Court sanction Spinrilla[6] and (4) have more time to finalize their list of allegedly infringing works.[7] (Transcript of 08/16/2017 Hearing, p. 41:23-42:6 and p. 41:23-42:6 and Transcript of 09/19/2017 Hearing, pp. 9:25-11:5 and 60:7-11). Any delay in obtaining the disabled sound recordings and information related thereto is a direct result of Plaintiffs' lies and failure to articulate what they could and could not access from the Spinrilla service.

Further, the information for the disabled songs was not readily available to Defendants. As Defendants have consistently indicated, the database fields for sound recordings disabled from Spinrilla service is not stored in any spreadsheet or

---

[6] Plaintiffs said, "So, clearly there are databases and reports within the system that have this information that should have been produced to us already. The website itself when you go to the website has stream and download counts for mixed tapes and tracks. That can only work if there is a database that tracks that information. So, we have been frustrated because it seems it is so self-evident that the information we have been requesting exists or else the website wouldn't work." (Transcript 09/19/2017 Hearing, p. 38:10-18)).

[7] In trying to justify their delay in finalizing their list of songs allegedly infringed, Plaintiffs told this lengthy lie: "We're happy to take this in steps, Your Honor, and work with the names -- track name, title name -- track name, artist, length, the metadata. Not the file itself. He doesn't have to produce 1.1 million MP3 files to us. But the metadata for what is on the system, which is the track, the title, the artist name, the album name if it is available, the track length. The things that would indicate what the track purports to be. And then we could go through that list. And if we identify works that are owned by our clients, we could then say, okay, we want the MP3 files for these to confirm that they are what they purport to be. That would be a reasonable process." (Transcript of 09/19/2017 Hearing, pp. 59:4-16) (For more claims by Plaintiffs that they cannot finalize their list until they get information from Spinrilla, see Transcript of 09/19/2017 Hearing, pp. 94:18-96:2).

document regularly maintained by Defendants. Instead, in an effort to comply with Plaintiffs' requests and the Court's Orders, Defendants wrote code and created a program to gather the database information identified by Mr. Copeland during his deposition for the sound recordings disabled from the Spinrilla service, which took Defendants time. Defendants also had to download, transfer, and save approximately 90,000 sound recordings which was another time consuming task. Defendants made their best efforts to produce the expansive information requested by Plaintiffs in a timely manner.

## IV.   <u>Conclusion</u>

Based on the foregoing, Defendants respectfully requests that the Court deny Defendants' Motion for Leave to Amend Exhibit A to the Amended Complaint due to the prejudice it would cause Defendants and Plaintiffs' undue delay.

Respectfully submitted this 25th day of April, 2018.

**LILENFELD PC**

*/s/ David M. Lilenfeld*
David M. Lilenfeld
Georgia Bar No. 452399
David@Lilenfeld.com
Kaitlyn A. Haase
Georgia Bar No. 431935
Kaitlyn@Lilenfeld.com
3379 Peachtree Road NE, Suite 980
Atlanta, GA 30326
(404) 201.2520

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ATLANTIC RECORDING CORPORATION, *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: |
| v. | ) ) | 1:17-CV-0431-AT |
| SPINRILLA, LLC, *et al.,* | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2018, I served the foregoing *Opposition to Plaintiffs' Motion for Leave to Amend Exhibit A to the Amended Complaint (Dkt. 194)* with the Clerk of Court using the CM/ECF system, which automatically and contemporaneously sends electronic notification and a service copy of such filing to all counsel of record:

James A. Lamberth, Esq.                     Kenneth L. Doroshow, Esq.
james.lamberth@troutmansanders.com          kdoroshow@jenner.com


Ava U. McAlpin, Esq.                        Previn Warren, Esq.
amcalpin@jenner.com                         pwarren@jenner.com

Dated: April 25, 2018

*s/David M. Lilenfeld*
David M. Lilenfeld