IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ATLANTIC RECORDING CORPORATION, et al., | : | |
| Plaintiffs, | : : : | |
| | : : | CIVIL ACTION NO. 1:17-cv-00431-AT |
| v. | : : | |
| SPINRILLA, LLC, and JEFFERY DYLAN COPELAND, | : : : | |
| Defendants. | : | |

# **ORDER**

This matter is before the Court on Defendants' Motion for Certification Pursuant to 28 U.S.C. Section 1292(b) [Doc. 395].[1]

---

[1] Defendants' Consent Motion to Extend Time to File Their Reply Brief in Further Support of Motion for Certification [Doc. 401] was inadvertently granted by docket entry on July 27, 2021. Although the Local Rules provide a timeline for filing reply briefs, the court need not wait for a party to file a reply before ruling on the motion. *Fountain v. United States*, CV 114-127, 2016 WL 8136656, at *3 (S.D. Ga. Dec. 8, 2016), *report and recommendation adopted*, CV 114-127, 2017 WL 434050 (S.D. Ga. Jan. 31, 2017) (finding that the court need not have considered the plaintiff's reply before ruling on her motion), *aff'd*, 725 F. App'x. 891 (11th Cir. 2018); *Podger v. Gulfstream Aerospace Corp.*, 212 F.R.D. 609, 610 (S.D. Ga. 2003) ("the Court can rule on a motion immediately after it receives a response brief. "Reply briefers," then, should move quickly (precisely why Rule 7.6 says to notify the Court "immediately"). To that end, parties are free to telephonically notify each judge's deputy clerk of their reply-brief plans."); *see also Bettis v. Toys "R" Us-Delaware, Inc.*, 273 F. App'x. 814, 819 (11th Cir. 2008) ("With respect to whether there was an abuse stemming from the court's granting of the motion prior to receiving Bettis's response, there was no error. Neither the Federal Rules of Civil Procedure nor the Local Rules require the court to obtain a response from the non-moving party before ruling on a motion for a protective order. . ."). The Scheduling Order on the motion for interlocutory appeal briefing did not expressly provide for a reply brief. Here, the arguments in Defendants' motion fail on their face and no reply is needed for the Court's ruling.

Defendants request that the Court certify its Order granting Plaintiffs' motion for summary judgment finding that Defendants are liable for direct copyright infringement (Doc. 391) for immediate interlocutory appeal.

Specifically, Defendants request that three questions of law be certified for immediate appeal:

(1) Whether volitional conduct is a necessary element for holding a user generated content (UGC) based internet company liable for direct copyright infringement?

(2) If volitional conduct is a necessary element for finding an internet company liable for direct copyright infringement, whether streaming content is an affirmative act that meets the volitional conduct requirement?

(3) Whether streaming alone, without a volitional act, is enough to find a UGC based internet company liable for direct copyright infringement?

I. DISCUSSION

Certification under § 1292(b) is an extraordinary measure, which is permitted only in exceptional circumstances. *See McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1256 (11th Cir.2004). Section 1292 requires three criteria to be met before certification is permitted: (1) the order must concern a controlling question of law (2) there is substantial ground for difference of opinion and (3) an immediate appeal from the order will materially advance the ultimate termination of the litigation. *See id.* at 1264. This is because an appeal gives the higher court "a power of review, not one of intervention." *Consumer Fin. Prot. Bureau v.*

*Frederick J. Hanna & Associates, P.C.*, 165 F. Supp. 3d 1330, 1335 (N.D. Ga. 2015) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). In reality the "controlling issue of law" and "materially advance the litigation" prongs of the Section 1292 operate as two sides of the same coin. *See id.* A question of law is considered "controlling" if it "has the potential of substantially accelerating disposition of the litigation." *Id.* (quoting *Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Commissioners*, 952 F.Supp.2d 1360, 1362 (N.D.Ga. 2013) (citations omitted). An appeal is likely to materially advance the litigation if it would "serve to avoid trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259 (when appeal would dispose of one claim out of seven, certification inappropriate).

Contrary to Defendants' assertion, whether volitional conduct is a necessary element for establishing liability for direct copyright infringement" is not a controlling issue of law in this case because it does not affect the outcome of the Court's ruling on Plaintiff's motion for summary judgment. Although this Court noted that the "Eleventh Circuit has not considered whether 'volitional' conduct is a necessary element for finding an internet company liable for direct copyright infringement," it found Defendants liable for direct infringement based on their volitional conduct of online streaming that was the direct cause of the infringement of Plaintiffs' copyrighted sound recordings. (*See* Order at 15-16, 29-30, 33-34.) Specifically, the Court found that: (1) even if volitional conduct is required to prove direct infringement, the cases on which Plaintiffs rely have all held that the

3

affirmative act of streaming constitutes direct infringement of the copyright holder's exclusive right of performance regardless of the fact that the streaming occurs at the request of a third-party user of the defendant's online service; and (2) Defendants have created an interactive internet player that streams copyrighted content directly from its website and mobile app infringing Plaintiffs' exclusive right "to perform" their copyrighted sound recordings "publicly by means of a digital audio transmission" under 17 U.S.C. 106(6). (*Id*. at 33-34.) A finding by the Eleventh Circuit on an interlocutory appeal that volitional conduct is in fact a necessary element of direct infringement would not impact this Court's ruling on summary judgment and, therefore would not materially advance the ultimate termination of the litigation.

The second and third issues[2] posed by Defendants for immediate appeal likewise do not present controlling issues of law because they involve mixed questions of law and fact. *McFarlin*, 381 F.3d at 1258 (only "pure" questions of law are appropriate for certification). Defendants assert that these questions require that the Court of Appeals assess the legal standard for liability for an internet company. To the contrary, the determination of whether online streaming of copyrighted protected content is an affirmative act that meets the volitional conduct requirement necessarily depends on the court's examination of the

---

The Scheduling Order on the motion for interlocutory appeal briefing did not expressly provide for a reply brief.  [2] The third issue posed by Defendants' motion – "whether streaming alone, without a volitional act, is enough to find a UGC based internet company liable for direct copyright infringement?" – is bound up in the first and second issues as the Court found that streaming was a volitional and affirmative act based on the precise factual circumstances of this case.

specific factual circumstances presented by the case, including a consideration of what type or level of conduct is sufficient to constitute a "volitional" act. As this Court noted in its summary judgment order:

> [A] claim for direct liability requires evidence that the defendant directly or actively caused the infringement. *See, e.g., CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) ("While the Copyright Act does not require that the infringer know that he is infringing or that his conduct amounts to a willful violation of the copyright owner's rights, it nonetheless requires *conduct* by a person who causes in some meaningful way an infringement.") (emphasis in original). Some courts describe this as requiring evidence of "volitional" conduct by the defendant. *E.g., Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) ("In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant."). But "the word 'volition' in this context does not really mean 'an act of willing or choosing' or an 'act of deciding' . . . it 'simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability.'" *Id.* The requirement of volition "is not a judicially-created element of intent or knowledge; it is a basic requirement of causation. As its name suggests, *direct* liability must be premised on conduct that can reasonably be described as the *direct* cause of the infringement." *Id.* (emphasis in original).

(*Id.* at 15.) Defendants simply disagree with this Court's conclusion that the facts of this case establish sufficient conduct on the part of Defendants to warrant the imposition of liability for direct copyright infringement and they hope that the Court of Appeals will agree with their position that they were merely passive observers to the infringement by the users of the Spinrilla music streaming platform.

Nor is there a substantial ground for difference of opinion on the questions posed by Defendants' motion as necessary to warrant certification for immediate

5

appeal. Parties must clear a high bar when attempting to show that a question involves a substantial ground for difference of opinion. A substantial ground for difference of opinion may exist when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue. *Id.*; *Georgia NAACP*, 952 F.Supp.2d at 1362; *see also U.S. ex rel. Powell v. Am. InterContinental Univ., Inc.*, 756 F.Supp.2d 1374, 1378–79 (N.D.Ga.2010). However, "the fact that the question is one of first impression, standing alone, is insufficient," because the district judge has the obligation to "analyze the strength of the arguments in opposition to the challenged ruling" when deciding whether to certify. *CFPB*, 165 F. Supp. 3d at 1335 (citing *In re Flor*, 79 F.3d 281, 284 (2d. Cir.1996) and *Couch v. Telescope, Inc.*, 611 F.3d 629, 634 (9th Cir.2010)). Instead, the issue must be "difficult" too. *Id.*; *see also Rindfleisch v. Gentiva Health Svcs.*, 24 F.Supp.3d 1234, 1239 n. 5 (N.D.Ga.2013) (denying certification of issue that "has never been decided").

The fact that the Eleventh Circuit has not yet decided whether volitional conduct is a necessary element of a claim for direct infringement is not dispositive of Defendants' motion. Defendants have failed to satisfy the requirements of § 1292 because the questions posed by Defendants' motion are not "difficult" issues warranting certification. The only basis on which Defendants assert that "the issues are difficult" is because the D.C. Circuit Court in *Spanski* – one of the cases relied on by this Court on summary judgment – declined to address the volitional act requirement. *See Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 883 F.3d

904, 912 (D.C. Cir. 2018) ("Our court has yet to decide whether to read such a volitional conduct or proximate cause requirement into the Copyright Act, and we need not do so today. TV Polska's conduct—"us[ing] its own equipment" to "allow[] [users] to watch television programs, many of which are copyrighted," by transmitting content upon a user's request, *Aereo*, 134 S.Ct. at 2506—constitutes infringement under *Aereo*'s binding authority, whatever the scope of any such requirement might otherwise be."). Defendants further contend that "whether or not the act of streaming meets the volitional act requirement is not straightforward" because the First Circuit, in dicta, suggested that the "'volitional act' position' had been raised "with varying degrees of success" in other circuits. *See Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 55–56 (1st Cir. 2012) ("The Archbishop's "volitional act" position is not a novel one; it is an argument that has been raised—with varying degrees of success—in our sister circuits. We need not determine whether a volitional act must be shown to establish direct copyright infringement because, regardless of such a holding, the Monastery here still prevails. Contrary to the Archbishop's contention that he did not engage in infringing acts, the record makes clear that he performed several acts to ensure that copies of the Works were available on his server and posted to his Website."). This Court is not persuaded. The case law is clear that regardless of the label assigned to the conduct – i.e. as volitional, intentional, deliberate, etc. – the critical inquiry in determining liability for direct infringement is whether the defendant engaged in specific activity to cause the infringement. *E.g.*, *ABC v.*

*Aereo, Inc.*, 573 U.S. 431, 440-443 (2014) (acknowledging that the subscribers, not Aereo, selected the copyrighted content they wanted to stream, but finding that Aereo was liable for transmitting copyrighted television programs in violation of the Copyright Act because "Aereo is not simply an equipment provider" but "uses its own equipment" and technology to "receive programs that have been released to the public and carries them by private channels to additional viewers"); *Spanski Enterprises, Inc.*, 883 F.3d at 913 (TV Polska's conduct—"us[ing] its own equipment" to "allow[ ] [users] to watch television programs, many of which are copyrighted," by transmitting content upon a user's request—constitutes infringement under *Aereo*'s binding authority, whatever the scope of any such requirement might otherwise be . . . The district court did not hold TV Polska liable for infringement merely because it maintained a video-on-demand system. Rather, the court concluded—and we agree—that TV Polska's own use of this system to communicate infringing performances amounted to actionable conduct under the Copyright Act."); *Soc'y of Holy Transfiguration Monastery, Inc.*, 689 F.3d at 56 (rejecting the Archbishop's contention that he did not engage in infringing acts where: (1) he was the registered owner of the domain name, "trueorthodoxy.info," i.e., the offending website; (2) he "admit[ted] he bears responsibility for and has authority over the content that appears on the [w]ebsite;" (3) he conceded his active involvement in the posting of materials to the server for public access even though he did not personally place content on the website; (4) he knew Father

8

Peter generally was uploading religious services to the website and that he expressly authorized him to do so).

Finally, certification of the Court's Order is unwarranted because it is unlikely to materially advance the litigation. Defendants assert that this case has already been "protracted and expensive," and "there is little left to do." What's left to do is the trial on damages. But because an appeal of the "'streaming' issue is inevitable" Defendants claim that staying the case now and allowing the appeal to proceed prior to trial would be more judicially efficient. Defendants' own arguments demonstrate that an interlocutory appeal will not materially advance the litigation because it will not "serve to avoid trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. An appeal can take a year or more. The Court has set deadlines for damages discovery and the submission of the pretrial order.

## II.   CONCLUSION

For these reasons, the Court **DENIES** Defendants' Motion for Certification Pursuant to 28 U.S.C. Section 1292(b).

**IT IS SO ORDERED** this 28th day of July, 2021.

                                                                      _____
                                                                      **AMY TOTENBERG
                                                                      UNITED STATES DISTRICT JUDGE**