UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., ARISTA MUSIC, ARISTA RECORDS LLC, BAD BOY RECORDS LLC, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., ROC-A-FELLA RECORDS, LLC, SONY MUSIC ENTERTAINMENT US LATIN LLC and ZOMBA RECORDING LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SPINRILLA, LLC and JEFFERY DYLAN COPELAND,<br><br>Defendants. | Civil Action No. 1:17-CV-00431-AT<br><br>**JOINT DISCOVERY STATEMENT** |

# JOINT DISCOVERY STATEMENT

The parties respectfully present this Joint Discovery Statement outlining issues on which they seek the Court's assistance. There are six issues—five relating to Plaintiffs' document requests ("RFPs") and one to Plaintiffs' interrogatories. Excerpts of the relevant requests (as narrowed through the meet and confer process) and objections are attached as Exhibit A. In the interest of concision, the parties address certain disputed items collectively below. Counsel for the parties have conferred in good faith and have been unable to resolve these items.

## ISSUES

1. **Production of Documents and Information Responsive to Plaintiffs' RFPs 8 and 10, and Interrogatory 3**

    A.   Plaintiffs' Position: At issue are two RFPs and an interrogatory that Plaintiffs have propounded seeking information about the finances of Defendant Copeland ("Copeland"). During the meet and confer process, Plaintiffs narrowed these requests such that they now address only assets that Copeland received *from Spinrilla* or *acquired with income or revenue from Spinrilla*. Likewise, Plaintiffs are willing to narrow RFP 10 to cover only liabilities related to Spinrilla.

    As narrowed, these requests are appropriate and seek information that is directly relevant to the issue of specific deterrence—a relevant factor in the calculation of statutory damages by the jury. *See Joe Hand Promotions, Inc. v.*

1

*Amos*, No. 5:18-cv-63, 2019 WL 5618185, at *4 (S.D. Ga. June 25, 2019); *Bork v. Tran Huong Quynh*, No. 2:19-cv-354-FtM-38MRM, 2020 WL 4474485, at *2-3 (M.D. Fla. Aug. 4, 2020).

The Eleventh Circuit has found it to be axiomatic that, "in promoting deterrence, the economic wealth of a tortfeasor may be considered." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1338 (11th Cir. 1999); *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1364 (11th Cir. 2004) (approving a large damages award where a smaller amount would fail to deter the defendant). More specifically, "a defendant's financial condition is relevant to determining statutory damages" under the Copyright Act. *Jones v. Amicizia Events, Inc.*, No. 19-cv-8181 DMG (ASx), 2020 WL 6065927, at *3 (C.D. Cal. Apr. 3, 2020); *see also*, *Sony Music Entm't v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795, 841-42 (E.D. Va. 2020) (holding that "size and wealth of the defendant" is relevant to such an award and collecting cases).

Faced with this controlling precedent, Defendants attempt to mischaracterize Plaintiffs' RFPs as seeking "post-judgment" discovery concerning award enforceability. However, Plaintiffs seek this discovery for the very reasons repeatedly upheld by the Eleventh Circuit. *See Johansen*, 170 F.3d at 1338.

During the meet and confer process, Defendants pointed to the Court's August 28, 2017 ruling ("Order") from the liability phase of discovery, which stated that

Plaintiffs' RFP 60[1] exceeded the "bounds of permissible damages discovery" and limited the request to "financial documents of Mr. Copeland to those showing the revenues, income, and assets he has received from Spinrilla." Dkt. 58 at 4-5. Accordingly, Plaintiffs have narrowed their requests to align with the Order. Defendants' overly broad reading of the Court's Order, under which *any* damages discovery into Copeland's finances is off limits, is not consistent with the precedent cited above, nor does it square with the Court's statement that "Plaintiffs may propound additional damages discovery requests at the conclusion of discovery on liability." *Id.* at 5. Unbroken precedent compels the conclusion that information relating to Copeland's income, revenue, and assets (to the extent derived from Spinrilla), and liabilities, are relevant to the specific deterrence factor of the statutory damages analysis. Thus, Defendants should be compelled to produce documents responsive to RFPs 8 and 10 and to respond to Interrogatory 3, as narrowed.

B. <u>Defendants' Response</u>: Plaintiffs mischaracterize this dispute. Defendants do not contend that "any damages discovery into Copeland's finances is off limits" as Plaintiffs claim. In fact, in response to other discovery requests Defendants have produced information relating to Mr. Copeland's finances. For

---

[1] Plaintiffs' RFP 60 sought "[d]ocuments reflecting Jeffery Dylan Copeland's revenues, income, assets and liabilities."

3

example, Defendants produced Spinrilla's Schedule K-1 IRS filings from 2014 through 2019. (SPIN000134192-134192 (produced previously) & SPIN-D000006 - 19 produced August 12, 2021). Defendants also produced Spinrilla's QuickBooks General Ledger which shows all financial transactions between Spinrilla and Mr. Copeland from 2014 through present. (SPIN-D000028 produced August 27, 2021).

Plaintiffs are not satisfied with this production, insisting that Defendants also produce documents identifying assets owned or controlled by Mr. Copeland "that he *acquired* with income or revenue received from Spinrilla" (Request No. 8 (emphasis added)) as well as extensive information regarding any cryptocurrencies or nonfungible tokens that either Spinrilla or Mr. Copeland may have "acquired . . . with income or revenue received from Spinrilla." (Interrogatory No. 3). This goes far beyond the Court's Order permitting Defendants "to limit the production of financial documents of Mr. Copeland to those showing the revenues, income, and assets he has *received from Spinrilla*." (Dkt. 58 at 5 (emphasis added)).

Plaintiffs have not articulated why obtaining discovery about how Mr. Copeland *used* income or revenue from Spinrilla is discoverable at this stage (as this is essentially post-judgment collections discovery). Plaintiffs rely on two Eleventh Circuit cases (*Johansen* and *Kemp*), which involve *punitive* damages for the proposition that "wealth" of a tortfeasor may be considered to promote "deterrence."

4

But, the Copyright Act does not provide for punitive damages (*Calio v. sofa Express, Inc.,* 368 F. Supp. 2d 1290, 1291 (M.D. Fla. 2005).

Plaintiffs' reliance on the two other copyright infringement cases is also misplaced. In *Jones,* the discovery request at issue "related to Defendants' gross revenues for the three years preceding the Complaint." (*Jones v. Amicizia Events, Inc.,* 20202 WL 6065927, at * 3 (C.D. Cal. April 3, 2020). Here, Defendants have already produced the analogous information. Similarly, in *Cox* the issue before the court was whether the jury's consideration of Cox's total profits (when only one aspect of its business was implicated in the infringing activity) and value of case dividends paid to Cox's owners was error. (*Sony Music Ent. v. Cox Communications,* 464 F. Supp. 3d 795 (E.D. Va. 2020)). Again, Defendants have already produced documents reflecting the total revenue Mr. Copeland received from Spinrilla. Defendants only object to producing information relating to assets owned, controlled, or held in trust for Mr. Copeland (including cryptocurrency) "acquired with income or revenue received from Spinrilla" (RFP 8) as well as all of Mr. Copeland's liabilities (RFP 10). Such information is invasive and should not be produced because Plaintiffs have information regarding Spinrilla's gross revenue as well as all income Mr. Copeland received from Spinrilla which provides discoverable information through less intrusive means. If this information is

discoverable at all, it would be at the post-judgment discovery stage.

    C.    <u>Plaintiffs' Reply</u>: Controlling precedent clearly holds that a defendant's personal wealth is relevant to deterrence. Defendants lack any contrary authority and their attempt to deflect the Court's focus is misguided. First, the basis for these requests is deterrence—a critical, recognized factor in determining statutory damages. The requests do *not* seek "post-judgment" discovery. Second, Defendants offer no support for their position that the deterrence inquiry is different in the context of the punitive damages analysis. In fact, the same principles animate the deterrence analysis in both contexts. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990) (deterrence is relevant because "defendants must not be able to sneer in the face of copyright owners and copyright laws" (cleaned up); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1338 (11th Cir. 1999). Third, Defendants' production of information regarding Copeland's income from Spinrilla is inadequate. It sheds zero light on Copeland's liabilities (as to which Defendants have produced nothing), leaving obscured Copeland's *profits* from infringement on Spinrilla. As such, Defendants have not satisfied the standard set forth in *Cox*. Moreover, past income says nothing about Copeland's present financial circumstances. Again, Plaintiffs are entitled to this information to make their case about the deterrence value of a damages award.

## 2. Production of Documents Responsive to Plaintiffs' RFPs 13-15

A. <u>Plaintiffs' Position</u>: Plaintiffs' RFPs 13-15 seek documents prepared on or after October 31, 2017 regarding Spinrilla's financing, actual or potential investments, valuations or appraisals of Spinrilla, and forecasts and budgets. During the meet and confers, Plaintiffs agreed to narrow these RFPs to cover only the period prior to the Court's summary judgment ruling, *i.e.*, through November 30, 2020.

These requests are directly relevant to the calculation of statutory damages. Plaintiffs contend that Defendants grew the value of their business largely based on the infringement of Plaintiffs' sound recordings. Accordingly, decreases in projections or valuations of the business or changes in Defendants' ability to obtain financing following their implementation of Audible Magic and removal of copyrighted content would support Plaintiffs' contention that Defendants' profitability was directly tied to the availability of Plaintiffs' copyrighted sound recordings on Spinrilla. Thus, documents responsive to these requests are clearly relevant to show the impact of Defendants' infringement on Spinrilla's business, and accordingly, Defendants' profits from the infringement.

Defendants have principally argued that the August 28, 2017 Order forecloses these RFPs. Again, however, this position rests on an overbroad and inaccurate reading of that Order. In presenting this issue to the Court during the liability phase

of these proceedings, Defendants argued that requests similar to RFPs 13-15 were improper because, *inter alia*, they were "not relevant or necessary to" the questions of "whether the Spinrilla Service facilitates copyright infringement or whether Defendants are liable for copyright infringement." Dkt. 58 at 3. The Court agreed with Defendants that "*at this time*" such requests were not appropriate, leaving open the issue of whether such discovery might be appropriate during a damages phase. *Id.* (emphasis added). As the question is no longer whether Defendants are liable for infringement (they are), the earlier rationale for limiting discovery into these issues does not apply. Accordingly, Defendants should be compelled to produce documents responsive to RFPs 13-15.

B. <u>Defendants' Response:</u> Plaintiffs are attempting a second bite at the apple. The Court already ruled that Defendants were not required to produce documents regarding communications between potential investors or Defendants' business plans or presentations to potential investors. (Dkt. 58 at 3). The Court stated that it agreed with Defendants that "Defendants' profit and loss statements . . . and documents demonstrating Defendants' ownership structure . . . provide relevant information through less intrusive means." (Dkt. 58 at 3).

Plaintiffs argue that the information is relevant to show "the impact of Defendants' infringement on Spinrilla's business." Apparently, arguing the

8

documents would show that Spinrilla's profitability was directly tied to the availability of the copyrighted sound recordings. But as this Court recognized, Spinrilla's profit and loss statements are the best source to show whether or not Spinrilla's profitability was directly tied to the availability of those sound recordings. (Dkt. 58 at 3). Those P&L statements and the General Ledger have been produced.

Plaintiffs' argument that their requests are proper rests on a truncation and mischaracterization of a quoted portion of the Court's Order:

- Plaintiffs': "Defendants' argued that the requests … were improper because, *inter alia* they were '*not relevant or necessary to*' the questions of '*whether the Spinrilla Service facilitates copyright infringement or whether Defendants are liable for copyright infringement*.'"

- Order: "not relevant or necessary to *resolve any of the claims or defenses in this case* – whether the Spinrilla Service facilitates copyright infringement or whether Defendants are liable for copyright infringement." (Order, Dkt. 58 at 3).

The Court acknowledged that Defendants argued that its "profit and loss statements . . . and documents demonstrating Defendants' ownership structure . . . provide relevant information through less intrusive means." The Court "agreed" with Defendants, demonstrating that both Defendants and the Court recognized that damages documents related to "one of the claims . . . in this case." (Dkt. 58 at 3).

While the Court left open the possibility that "evidence may emerge that makes a far more narrowly tailored discovery request appropriate for consideration," Plaintiffs have not pointed to any new evidence nor served "far more narrowly tailored" requests. (Dkt. 58 at 3, fn. 1). Instead, they contend that the information is now discoverable merely because the case is in the damages phase. But, contrary to Plaintiffs' claims, the original requests were not served during the liability phase. Rather, the Court only bifurcated discovery in the same Order in which it denied Plaintiffs' request to compel, stating that "the Court finds that bifurcating discovery relating to liability and damages is appropriate, *except* as already required and addressed here." (Dkt. 58 at 5 (emphasis in original)).

C. <u>Plaintiffs' Reply:</u> Four years ago, the Court ruled on the permissibility of Plaintiffs' previous similar requests. Dkt. 58. But it wisely limited its earlier order to what was appropriate "at th[at] time," recognizing that the appropriate scope of discovery into Spinrilla's profits might change. Dkt. 58 at 3. Indeed, much has changed in the intervening years: Defendants have been found liable for massive infringement. Defendants' profits from the infringement is now a central issue in this case, and Plaintiffs are entitled to documents relevant to that issue, even if previously (when the issue was *whether* Defendants had infringed) they were not.

Respectfully submitted this 9th day of September, 2021.

| JENNER & BLOCK LLP | LILENFELD PC |
|---|---|
| /s/ Andrew H. Bart<br>ANDREW H. BART<br>(admitted *Pro Hac Vice*)<br>919 Third Avenue, 37th Floor<br>New York, New York 10022<br>Telephone: (212) 891-1600<br>Facsimile: (212) 891-1699<br><br>PREVIN WARREN<br>(admitted *Pro Hac Vice*)<br>1099 New York Ave., N.W. Suite 900<br>Washington, DC 20001<br>Telephone: (202) 637-6361<br>Facsimile: (202) 639-6066<br><br>TROUTMAN SANDERS LLP<br><br>JAMES A. LAMBERTH<br>Georgia Bar No. 431851<br>600 Peachtree Street, N.E.<br>Suite 5200, Bank of America Plaza<br>Atlanta, GA 30308-2216<br>Telephone: (404) 885-3362<br>Facsimile: (404) 962-6611<br><br>*Attorneys for Plaintiffs* | /s/ David M. Lilenfeld<br>DAVID M. LILENFELD<br>Georgia Bar No. 452399<br>ROBIN L. GENTRY<br>Georgia Bar No. 289899<br>Kennington R. Groff<br>Georgia Bar No. 782901<br>3379 Peachtree Road, N.E., Suite 980<br>Atlanta, GA 30326<br>Telephone: (404) 201-2520<br>David@Lilenfeld.com<br>Robin@Lilenfeld.com<br>Kg@Lilenfeld.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

I, Andrew H. Bart, an attorney, hereby certify that the foregoing has been prepared with a font size and point selection (Time New Roman, 14 pt.) which is approved by the Court pursuant to Local Rules 5.1(C) and 7.1(D).

/s/ Andrew H. Bart

## CERTIFICATE OF SERVICE

I, Andrew H. Bart, an attorney, hereby certify that on this 9th day of September, 2021, the parties' Joint Discovery Statement was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send an electronic notification and a service copy of this filing to all counsel of record who have appeared in this matter.

/s/ Andrew H. Bart