# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., ARISTA MUSIC, ARISTA RECORDS LLC, BAD BOY RECORDS LLC, CAPITOL RECORDS, LLC, ELECTRA ENTERTAINMENT GROUP INC., SONY MUSIC ENTERTAINMENT US LATIN LLC, ZOMBA RECORDING LLC, ROC-A-FELLA RECORDS, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>SPINRILLA, LLC and JEFFERY DYLAN COPELAND,<br><br>    Defendants. | Civil Action No.<br>1:17-CV-00431-AT |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' THIRD MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT RELATED TO PLAINTIFFS' LICENSING AGREEMENTS <u>WITH THIRD PARTIES</u>**

Pursuant to Rules 402 and 403 of the Federal Rules of Evidence, Plaintiffs move in limine to preclude Defendants from introducing any evidence or making argument at trial pertaining to Plaintiffs' licensing agreements with third parties that have no relation to this case. Specifically, Defendants have included on their exhibit list **232** highly confidential licensing agreements between Plaintiffs, on one side, and nine digital service providers ("DSPs"), such as Spotify and Apple, on the other side ("DSP agreements"). *See* Dkt. 440 at 159-86 (identifying Defendants' trial exhibits 55-181, 185-289). To be clear, Defendants are not parties to *any* of these agreements nor do Defendants claim any right to use Plaintiffs' recordings pursuant to those agreements, which generally govern Plaintiffs' licensing of their sound recordings on a catalog-wide basis to legitimate streaming distribution platforms. Evidence or argument related to these DSP agreements is irrelevant to the issues to be tried, would expose the terms of Plaintiffs' highly confidential business deals to the public, and would unnecessarily overload the jury with voluminous complex materials, serving only to distract and confuse the jurors into rendering an improper statutory damages award.

Given the irrelevant and prejudicial nature of this evidence and argument, the 232 DSP agreements, and any testimony related to those agreements, should be excluded at trial.

## BACKGROUND

During discovery on damages, Defendants demanded that Plaintiffs produce "[a]ll license agreements and contracts, including drafts of license agreements and negotiation discussions, that Plaintiffs entered into with third parties, including but not limited to Spotify, Apple Music, Amazon Music, Pandora, SoundCloud, and YouTube to license the 4,082 sound recordings at issue." *See* Ex. A (Plaintiffs' Responses and Objections to Defendants' Requests to Produce) No. 5.  Plaintiffs objected to the relevance of these materials, but to avoid raising a dispute with the Court at the document production phase, agreed to produce "the relevant portions of license agreements between Plaintiffs and third-party streaming and downloading services representing approximately 90% of the United States market for such services." *Id.*  Because the DSP agreements contain highly-sensitive information as to payment rates and other terms negotiated between Plaintiffs and their digital partners, Plaintiffs designated these documents as "HIGHLY CONFIDENTIAL" and "RESTRICTED CONFIDENTIAL—COMPETITELY SENSITIVE INFORMATION" pursuant to the terms of the stipulated pre-trial protective order between the parties and approved by the Court.  Dkt. 407.

Confirming the validity of Plaintiffs' relevance objection, Defendants did not rely on the DSP agreements at all during the expert phase of damages discovery. Indeed, Defendants' damages' expert, Justin Lewis, does not even mention the DSP

3

agreements in offering his opinions as to Plaintiffs' purported damages. Nevertheless, Defendants included all 232 DSP agreements on their exhibit list, indicating that they may now seek to bombard the jury with these highly sensitive documents.

## LEGAL STANDARD

Evidence is relevant only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Moreover, relevant evidence can be precluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The decision to "admit or exclude evidence at trial rests squarely within the discretion of the trial judge." *United States v. Perez–Garcia*, 904 F.2d 1534, 1544 (11th Cir. 1990).

## ARGUMENT

I. **The DSP Agreements Are Irrelevant Because They Have No Bearing On Plaintiffs' Damages Award.**

Plaintiffs have elected to seek statutory damages in this action. *See* 17 U.S.C. § 504(c). In determining the appropriate amount of statutory damages to award to

Plaintiffs, the jury will consider "the profits [Defendants] earned because of the infringement; the revenues that [Plaintiffs] lost because of the infringement; the difficulty of proving [Plaintiffs'] actual damages; the circumstances of the infringement; whether [Defendants] intentionally infringed [Plaintiffs'] copyright[s]; and deterrence of future infringement." *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1218 (11th Cir. 2021) (quoting *Eleventh Circuit Pattern Jury Instructions (Civil Cases)* § 9.32 (2022)).

The DSP agreements are not relevant to *any* of these factors. As discussed above, Defendants' own damages expert, Mr. Lewis, did not rely on the DSP agreements in his effort to calculate Plaintiffs' purported actual damages, relying on other evidence instead. Plainly, no representative of Spinrilla or any other witness identified by Defendants is competent to address these agreements.

Further, independently of the lack of competence of any of Defendants' witnesses to address these materials, the DSP agreements are not an appropriate benchmark against which the jury should be permitted to consider an appropriate damages award in this case. The payment rates in the DSP agreements reflect a longstanding partnership between Plaintiffs and legitimate digital service providers that license Plaintiffs' *entire* music catalogs to make them available to their respective users for streaming or download. Those catalogs licensed in the DSP agreements consist of recordings owned by Plaintiffs performed by thousands of

5

artists, all of which the digital service providers make available to users of their services. The rates in the DSP agreements are premised on the availability and use of the entire catalog. They also reflect the particular nature of each digital platform at issue and can include different rates for different tiers of service offered by the platform (*e.g.*, a free, ad-supported tier and a subscription-based, ad-free tier).

By contrast, this case concerns Defendants' unlicensed use of a *subset* of hip-hop recordings from within Plaintiffs' catalogs, chosen at the discretion of Spinrilla's users and made available to any user of Spinrilla's site. Thus, unlike the DSP agreements, any hypothetical licensing arrangement with Defendants would either require a bespoke set of sporadic agreements to license individual works for indiscriminate distribution whenever one of Spinrilla's users uploaded those works to Spinrilla's platform, or a blanket license for Spinrilla to exploit an unidentified subset of Plaintiffs' recordings. Neither deal structure would resemble the DSP agreements.

## II. Even If The DSP Agreements Were Relevant, Evidence Or Argument Related To Those Agreements Should Be Excluded Under FRE 403.

Even if the DSP agreements had any relevance to Plaintiffs' statutory damages (which they do not), they should still be precluded from trial under Rule 403. The introduction of 232 voluminous license agreements (i.e., some exceed hundreds of pages) with non-parties to this case would only waste time and confuse the jury at

the cost of exposing Plaintiffs' confidential business deals with their digital partners. As discussed above, the uses covered by the DSP agreements are not comparable to Defendants' infringing use of the works in suit. Allowing introduction of the negotiated rates between Plaintiffs and their digital partners would mislead the jury into believing the rates have any relevance to the amount of statutory damages they should award in this case.

Additionally, the DSP agreements include different rate structures negotiated by the different Plaintiffs for each digital service provider's ad-supported, subscription, or download services.[1] The DSP agreements also include various terms and exhibits related to service functionality, delivery specifications, reporting requirements, and source code. To expect the jury to sift through these terms and exhibits would be a waste of time and needlessly confusing.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion in limine and preclude Defendants from introducing the 232 DSP agreements, and any related

---

[1] The rates and terms of the DSP agreements are highly confidential and competitively sensitive. In compliance with antitrust laws, the major record label groups negotiate individually with digital service providers and cannot and do not share the rates and terms of their DSP agreements with the other major record label groups. Accordingly, admitting the DSP agreements into evidence would require allowing some Plaintiffs' corporate representatives to leave the courtroom when another label group's agreements are presented to the jury, and the sealing of exhibits, testimony and arguments.

testimony, at trial.

This 8th day of March, 2023.  Respectfully submitted,

JENNER & BLOCK LLP

/s/ *Andrew H. Bart*

ANDREW H. BART
(Admitted Pro Hac Vice)
JACOB TRACER
(Admitted Pro Hac Vice)
OWEN W. KEITER
(Admitted Pro Hac Vice)
KARA V. BRANDEISKY
(Admitted Pro Hac Vice)
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

LOREAL R. ROCK
(Admitted Pro Hac Vice)
1099 New York Ave., N.W. Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

TROUTMAN PEPPER HAMILTON SANDERS LLP

JAMES A. LAMBERTH
james.lamberth@troutman.com
Georgia Bar No. 431851
600 Peachtree Street, N.E.
Suite 5200, Bank of America Plaza
Atlanta, GA 30308-2216
Telephone: (404) 885-3362
Facsimile: (404) 962-6611

*Attorneys for Plaintiffs*

**CERTIFICATE OF COUNSEL REGARDING FONT SIZE**

I, Andrew H. Bart, an attorney, hereby certify that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt. which is approved by the Court pursuant to Local Rules 5.1(C) and 7.1(D).

/s/ *Andrew H. Bart*
ANDREW H. BART

**CERTIFICATE OF SERVICE**

I, Andrew H. Bart, hereby certify that on this 8th day of March, 2023, the foregoing papers were electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification and a service copy of this filing to all counsel of record who have appeared in this matter.

/s/ *Andrew H. Bart*
ANDREW H. BART