# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| ATLANTIC RECORDING CORPORATION, LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., ARISTA MUSIC, ARISTA RECORDS LLC, BAD BOY RECORDS LLC, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., ROC-A-FELLA RECORDS, LLC, SONY MUSIC ENTERTAINMENT US LATIN LLC, and ZOMBA RECORDING LLC, | Civil Action No. 1:17-CV-00431-AT |

     Plaintiffs,

     v.

SPINRILLA, LLC and JEFFERY DYLAN COPELAND,

     Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SECOND *DAUBERT* MOTION TO EXCLUDE PORTIONS OF THE TESTIMONY OF DEFENDANTS' PROPOSED EXPERT WITNESS DR. JOHN STRAWN**

After numerous rights holders identified infringing uses of sound recordings on Spinrilla's platform, contacted Spinrilla about those uses, and threatened litigation against Spinrilla, Defendants began using an audio fingerprinting service called Audible Magic.  Audible Magic provides technology that can compare recordings uploaded to a client's server (here, Spinrilla's server) against a known database of copyrighted sound recordings so that the client can identify and remove infringing materials.  In this case, Spinrilla eventually implemented Audible Magic, but its initial implementation was belated and incomplete.

After being found liable for copyright infringement, Defendants apparently now seek to recast their implementation of Audible Magic as evidence that supports their position on the appropriate award of statutory damages.  To that end, Defendants included on their witness list Dr. John Strawn, a computer scientist whom Defendants retained during the liability phase of this litigation, to opine on various issues related to Audible Magic's technology and to testify that ███████████ ███████████████████████████████████████.  However, Dr. Strawn's opinions on this subject matter are methodologically flawed and thus largely inadmissible.

In particular, Plaintiffs seek to exclude two components of Dr. Strawn's testimony about how Defendants implemented Audible Magic.  *First*, while Dr.

Strawn opines on the technical history of Defendants' implementation of Audible Magic going back to 2015, he concedes that ████████████████████████ ████████████████████████. Instead, Dr. Strawn ████████████████████ ████████████████████████████. This admission is significant because ███████████████████████████████████████████ the historical source code is the only evidentiary record of those changes. Accordingly, any opinions Dr. Strawn might offer as to the implementation of Audible Magic before October 2017 are unreliable and should be excluded from the trial.

*Second*, many of Dr. Strawn's opinions about Spinrilla's technical implementation of Audible Magic are based on source code that Plaintiffs requested in discovery, but that Defendants refused to disclose to Plaintiffs. Thus, any testimony about or opinions based on Spinrilla's source code should be limited to those portions of the code that were actually disclosed to Plaintiffs.

During the liability phase of this litigation, Plaintiffs moved to strike portions of Dr. Strawn's testimony for substantially these reasons. *See* Dkt. 322. This Court found it unnecessary to rule on Plaintiffs' motion at that time, because it was able to find Defendants liable for copyright infringement without considering Dr. Strawn's testimony. In doing so, the Court stated it would "take up the motion at a later time if necessary." Dkt. 391 (Opinion and Order) at 46.

That time has now arrived.  In the Proposed Pretrial Order, Defendants gave notice that "[Dr.] Strawn is expected to testify as to the opinions summarized in his expert report."  Dkt. 440 at 72.  However, Dr. Strawn's opinions are no more admissible now than they were during the liability phase of this dispute.  Plaintiffs therefore move to for an order precluding Dr. Strawn from testifying about (1) Defendants' implementation of Audible Magic prior to October 4, 2017; and (2) any portions or aspects of Spinrilla's source code not disclosed to Plaintiffs.

## LEGAL STANDARD

Federal Rule of Evidence 702 sets a clear standard for when a Court may admit expert testimony.  "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based upon sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.  In determining the admissibility of expert testimony under this rule, trial courts must consider whether (1) "the expert is qualified to testify competently regarding the matters he intends to address"; (2) the testimony is reliable enough to be considered knowledge in the context of the relevant discipline; and (3) the testimony is relevant, in that it assists the trier of fact to understand or come to a conclusion regarding a material issue.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).

The Supreme Court has articulated—and this jurisdiction applies—four factors to help courts assess whether expert testimony is reliable: (1) whether an expert's proffered theory or method can be (and has been) tested or verified, (2) whether a theory has been subjected to peer review or publication, (3) whether the known or potential rate of error of a technique is within acceptable bounds for the particular discipline, and (4) the extent to which the evidence has been accepted within the relevant community.  *Magbegor v. Triplette*, 212 F. Supp. 3d 1317, 1325 (N.D. Ga. 2016) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993)); *see Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1294 (11th Cir. 2022).  These factors do not all apply evenly in every case, and courts must adapt the reliability inquiry to the nature of the testimony proffered.  *Frazier*, 387 F.3d at 1297 (Birch,

J., dissenting); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999). However, in doing so, courts must closely scrutinize the expert's principles and methodology and the reliability of the testimony before allowing its admission at trial.  *See id.*; *Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1309 (N.D. Ga. 2006) (citing *Daubert*, 509 U.S. at 595), *aff'd*, 212 F. App'x 916 (11th Cir. 2006); Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments.

Additionally, "[b]ecause of the powerful and potentially misleading effect of expert evidence," courts are especially cautious "'in weighing possible prejudice against probative force under Rule 403'" when considering proffered expert testimony.  *Frazier*, 387 F.3d at 1263 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)).  "Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming."  *Id.* (citation omitted).  The party offering the proposed expert opinion testimony "always bears 'the burden to show'" that the testimony satisfies the requirements for admissibility.  *See id*. at 1260.

## ARGUMENT

I.   **Dr. Strawn's Opinions About The History Of Spinrilla's Technical Implementation Of Audible Magic Are Unreliable.**

Dr. Strawn admits that ███████████████████████████████████████

████████████████. Ex. B (Strawn Dep.) 28:22-29:2, 126:15-17, 128:17-130:10.

However, Defendants admit that █████████████████████████████████████

██████████████████████████████████████████████████████—and

that █████████████████████████████████████████████████████

████████. *See* Dkt. No. 238-8 (Copeland Dep.) 67:9-19.  Thus, Dr. Strawn's failure

to ██████████████████████████████████████████████████████

████████ necessarily means that he was unable to evaluate how Spinrilla's

implementation of Audible Magic actually occurred and thus cannot reliably opine

on that subject.

An expert witness's opinion must be grounded in the relevant facts, *see* Fed.

R. Civ. P. 702(b), and will be excluded if "the leap from data to opinion [is] too

great." *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1331 (11th Cir. 2014); *see Gen.*

*Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  It follows that an expert who fails "to

consider available empirical data" cannot render a sufficiently reliable opinion on

the subject to which that data pertains.  *Fed. Trade Comm'n v. Simple Health Plans*

*LLC*, No. 18-CV-62593, 2021 WL 810262, at *7 (S.D. Fla. Mar. 3, 2021).  Courts

routinely exclude proffered expert testimony about historical facts when the witness "ignore[s] the data that was available from the relevant time period" bearing on those facts. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 795 (D. Md. 2013); *see, e.g.,* *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 383-84 (S.D.N.Y. 2014).



Dr. Strawn's failure to ███████████████████████████ ████████████ is fatal to his ability to opine about Spinrilla's implementation of Audible Magic ███████████. Critically, review of that source code is a necessary prerequisite to offering an informed expert opinion about how Spinrilla implemented Audible Magic.   Indeed, Dr. Strawn acknowledged in his deposition that ██ ███████████████████████████████████████████████████ ██████████████ Ex. B (Strawn Dep.) 107:9-11.

While the record contains independent evidence of the basic fact that Defendants implemented Audible Magic in some manner ████████████████, only the source code can support a technical analysis of the efficacy of that implementation at any point in time.   Accordingly, Dr. Strawn candidly admitted that ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████. *See* Ex. B (Strawn Dep.) 19:22-20:4, 69:10-70:8.

His explanation for this material failure—specifically his admission that he ███████████████████████████████████—underscores that any opinion he could offer about that period of time would be fundamentally unreliable and should not be presented to the jury. *Id.* 17:8-9, 17:12-13.

Further, evidence produced in this case demonstrates that ████████ ████████████████████████████████████████████████████████████████. For example, a ███████████ produced by Defendants reveals that ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ Dkt. 245-34 (Warren Ex. 435) at 15. Because Dr. Strawn did not review historical source code, he never evaluated what mistake may have prompted this ███████ and whether it bears on the efficacy of Defendants' use of Audible Magic prior to this lawsuit.

Nor can Dr. Strawn assess whether (and during what time periods) ███████ ████████████ Spinrilla used Audible Magic to check the copyright status of each sound recording uploaded to the service, whether those scans happened before each upload was made public, how much of each sound recording was scanned by Audible Magic, and whether or not the results of those scans actually resulted in any automatic actions such as "blocking" the sound recording from public access.

Ultimately, having failed to consider the changes that Spinrilla made to its source code over time, Dr. Strawn has no basis on which to render any opinions about Spinrilla's implementation of Audible Magic (or the adequacy of that implementation) ██████████████████████████████. Therefore, the Court should exclude such testimony.

## II.   Dr. Strawn's Opinions Based On Source Code Not Produced To Plaintiffs Are Untestable And Unverifiable.

Dr. Strawn's opinions about Spinrilla's implementation of Audible Magic are ████████████████████████████████████████████████████████. Ex. B (Strawn Dep.)  14:22-15:2.  Yet key elements of those opinions are based on Dr. Strawn's review of source code that was never provided to Plaintiffs. While Plaintiffs requested all of this material, Spinrilla refused to produce it.   It is inequitable and prejudicial now to allow Defendants to present expert testimony based on source code that they refused to produce during discovery.

Critically, the source code on which Dr. Strawn relied but which Defendants did not produce could answer key questions about the operation of Spinrilla's website and how Defendants implemented Audible Magic.  For example, Dr. Strawn reviewed and relied on unproduced source code that:

- ████████████████████████████████████████████████



*None* of that source code was produced to Plaintiffs.

The Federal Rules of Civil Procedure require parties to produce the materials considered by their experts so that the parties and the court can test the expert's analysis to ensure it is reliable. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii); *Kipperman v. Onex Corp.*, 411 B.R. 805, 845 (N.D. Ga. 2009). It is axiomatic that a party that ignores this obligation cannot introduce its expert testimony to the jury. *See, e.g.*, *Bizrocket.com, Inc. v. Interland, Inc.*, No. 04-60706-CV, 2005 WL 6745904, at *1 (S.D. Fla. Aug. 24, 2005) (granting motion to strike expert testimony); *United States v. Batchelor-Robjohns*, No. 03-20164-CIV, 2005 WL 1761429, at *3 (S.D. Fla. June 3, 2005) (same).

Here, Dr. Strawn's report and deposition testimony repeatedly confirmed that

. Indeed, Dr. Strawn testified that ████

██████████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. B

(Strawn Dep.) 17:1-4.  Dr. Strawn then ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████. *See* Ex. A (Strawn Report) ¶ 154;

*see, e.g.*, Ex. B (Strawn Dep.) 20:20-21:19, 22:6-13, 63:11-65:7, 86:19-87:3.

But Defendants did not grant Plaintiffs the same access to this critical source

code that they had given to Dr. Strawn.[1]  Accordingly, Plaintiffs were not able to test

or verify Dr. Strawn's opinions to the extent they are based on portions of the source

code Plaintiffs were prevented from accessing and examining.  *See* Dkt. 323-7

(Foster Report) ¶¶ 30, 40-44; Dkt. 238-20 (Loy Report) ¶¶ 24-27.  It would be unfair

and prejudicial to allow Dr. Strawn to testify based on portions of the source code

that were not disclosed to Plaintiffs.  The Court should permit Dr. Strawn to testify

only about those portions of Spinrilla's source code that were disclosed to Plaintiffs.

---

[1] While Plaintiffs requested Defendants' source code in discovery, Defendants
refused to produce it and the Court denied Plaintiffs' motion to compel.  *See* Dkt. 58
at 11.  Defendants nevertheless ████████████████████████
████████████████████ make it relevant to Defendants' theory of damages.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and exclude from trial Dr. Strawn's testimony regarding (1) Defendants' implementation of Audible Magic prior to October 4, 2017; and (2) opinions based on source code not disclosed to Plaintiffs.

This 8th day of March, 2023.          Respectfully submitted,


JENNER & BLOCK LLP                    TROUTMAN PEPPER HAMILTON
                                      SANDERS LLP
/s/ *Andrew H. Bart*
                                      JAMES A. LAMBERTH
ANDREW H. BART                        james.lamberth@troutman.com
(Admitted Pro Hac Vice)               Georgia Bar No. 431851
JACOB TRACER                          600 Peachtree Street, N.E.
(Admitted Pro Hac Vice)               Suite 5200, Bank of America Plaza
OWEN W. KEITER                        Atlanta, GA 30308-2216
(Admitted Pro Hac Vice)               Telephone: (404) 885-3362
KARA V. BRANDEISKY                    Facsimile: (404) 962-6611
(Admitted Pro Hac Vice)
1155 Avenue of the Americas           *Attorneys for Plaintiffs*
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699


LOREAL R. ROCK
(Admitted Pro Hac Vice)
1099 New York Ave., N.W. Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

I, Andrew H. Bart, an attorney, hereby certify that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt. which is approved by the Court pursuant to Local Rules 5.1(C) and 7.1(D).

/s/ *Andrew H. Bart*
ANDREW H. BART

## CERTIFICATE OF SERVICE

I, Andrew H. Bart, hereby certify that on this 8th day of March, 2023, the foregoing papers were electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification and a service copy of this filing to all counsel of record who have appeared in this matter.

/s/ *Andrew H. Bart*
ANDREW H. BART

13