UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., ARISTA MUSIC, ARISTA RECORDS LLC, BAD BOY RECORDS LLC, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., ROC-A-FELLA RECORDS, LLC, SONY MUSIC ENTERTAINMENT US LATIN LLC, and ZOMBA RECORDING LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>SPINRILLA, LLC and JEFFERY DYLAN COPELAND,<br><br>    Defendants. | Civil Action No.<br>1:17-CV-00431-AT |

**REPLY IN SUPPORT OF
PLAINTIFFS' SECOND *DAUBERT* MOTION
TO EXCLUDE PORTIONS OF THE TESTIMONY OF DEFENDANTS'
<u>PROPOSED EXPERT WITNESS DR. JOHN STRAWN</u>**

Defendants' opposition to Plaintiffs' motion regarding the expert testimony of Dr. John Strawn fails to meaningfully engage with the arguments Plaintiffs presented. Instead, it distorts the issues and misrepresents the purpose of Plaintiffs' motion in an attempt to deflect attention from Plaintiffs' clear entitlement to the relief sought. Accordingly, Plaintiffs now briefly summarize the focus of their motion before rebutting Defendants' arguments.

Spinrilla launched in early 2013. About three years later, in *December 2015*, Spinrilla began using an audio fingerprinting service called Audible Magic. Audible Magic's software, when properly implemented, compares sound recordings uploaded to an online service such as Spinrilla against a database of known copyrighted sound recordings and identifies when the uploaded sound recordings match recordings in the database, so that the service can remove those recordings and avoid infringing copyrights. At the insistence of copyright holders, Spinrilla gradually integrated this software into its source code and began using it to scan files uploaded to its servers. Finally, by approximately October 1, 2017, much of the infringing content on Spinrilla had been taken offline.

Defendants intend to rely on their belated implementation of Audible Magic as evidence that, notwithstanding the rampant infringement they engaged in and facilitated during the entire period at issue in this case, they intended to comply with

copyright law all along. To support that argument, they plan to elicit expert testimony from Dr. John Strawn, a computer scientist. However, Dr. Strawn's testimony suffers from two important methodological flaws that require its partial exclusion.

*First*, while Dr. Strawn opines extensively on the efficacy of Spinrilla's implementation of Audible Magic from December 2015 onward, he *never actually reviewed* the only evidence that would enable someone to form a definitive opinion on that topic, namely Spinrilla's historical source code from the relevant periods. Instead, Dr. Strawn reviewed Spinrilla's source code only as it existed on October 4, 2017—after Defendants had fully implemented Audible Magic's software. Defendants do not claim that Spinrilla's historical source code was unavailable to Dr. Strawn, but instead argue that Dr. Strawn could form an opinion about prior versions of Spinrilla's code based on his review of *other* documents. However, those documents have no bearing on the efficacy of how Defendants implemented Audible Magic, which is the subject matter of Dr. Strawn's testimony. Accordingly, Dr. Strawn's opinions about the implementation of Audible Magic on Spinrilla prior to October 4, 2017 are not supported by any reliable methodology, and they should be excluded.

*Second*, while Defendants gave Dr. Strawn free rein to review Spinrilla's entire source code, they concededly did not produce to Plaintiffs all of the source code Dr. Strawn considered as part of his review. As a result, Plaintiffs cannot test whether Dr. Strawn's opinions are accurate. While Defendants now claim that their failure to produce this underlying source code is immaterial because Dr. Strawn did not ***rely*** on any unproduced source code to form any of his opinions, that is not the standard for disclosure of expert materials under Federal Rule of Civil Procedure 26. Defendants were required to produce all materials that Dr. Strawn ***considered***, not just those he explicitly relied on. Because Defendants concededly failed to do so, Plaintiffs were deprived of the ability to determine whether materials Dr. Strawn considered might undermine or qualify his conclusions. Accordingly, Dr. Strawn should be precluded from opining about functions of Spinrilla's source code that were not produced to Plaintiffs.[1]

---

[1] Defendants represent that they will not elicit testimony from Dr. Strawn about all of those functions. Dkt. 496-1 (Defs.' Opp'n) at 11-12. Thus, this portion of Plaintiffs' motion affects only those functions of Spinrilla's code about which Defendants will seek to elicit testimony from Dr. Strawn.

3

## ARGUMENT

**I. Dr. Strawn's Opinions About The Efficacy Of Spinrilla's Implementation Of Audible Magic Before October 2017 Are Unreliable.**

Spinrilla implemented Audible Magic within the computer code that supports the Spinrilla platform. *See* Dkt. 475-1 (Strawn Report) at 56-69. Defendants retained Dr. Strawn to review that code and opine about whether it works effectively. *Id.* at 6. Unsurprisingly, therefore, Dr. Strawn freely admitted that his opinions about how Spinrilla implemented Audible Magic and whether it did so effectively were ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 475-2 (Strawn Dep.) 107:9-11.

Importantly, in reaching his opinions, Dr. Strawn reviewed Spinrilla's source code only as it existed on October 4, 2017. *Id.* 28:22-29:2, 126:15-17, 128:17-130:10. He did not review any prior versions of the code. Indeed, he testified that he ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* 17:8-9, 17:12-13.

Defendants nevertheless intend to elicit testimony from Dr. Strawn that directly addresses that history, in particular the efficacy of Defendants' implementation of Audible Magic from December 2015 through October 2017. Dkt. 496-1 (Defs.' Opp'n) at 6-11. This part of Dr. Strawn's testimony is unreliable, as

it offers an opinion about the technical operation of source code that Dr. Strawn did not review.[2]

This point is not academic. There is evidence in the record suggesting that Defendants ████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

As Plaintiffs have already explained, ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ Dkt. 245-34 (Warren Ex. 435) at 15.[3] Further, ████████████████

████████████████████████████████████████████████████████████████

---

[2] The scope of Dr. Strawn's proposed testimony distinguishes this case from *UMG Recordings, Inc. v. Grande Communications Networks, LLC*, No. A-17-CA-365-LY, 2019 WL 3207803 (W.D. Tex. July 16, 2019). In *Grande*, the expert actually reviewed source code from a prior version of the software at issue, though she only tested a later version of that software. *Id.* at *4. Thus, while she "could not testify how the software ran on a given date at a given time," she could reliably testify about how the software "generally worked" and changed over time. *Id.* Here, Defendants seek to elicit testimony from Dr. Strawn about the operation of versions of Spinrilla's source code that Dr. Strawn concededly did not review.

[3] Defendants minimize this as "a single edit," claiming that Plaintiffs "provide no basis for why that change was allegedly material." Dkt. 496-1 (Defs.' Opp'n) at 9. Of course, that presents the issue backwards. Since Defendants did not provide Plaintiffs with access to Spinrilla's historical source code, Plaintiffs *cannot assess* whether this change was material, or whether other material alterations may have been made. *See infra*, at 7-11. While Dr. Strawn could have assessed these questions, he chose not to.

5

███████████████████████████████████████████. *See* Dkt. 339 (Pls.' Reply SUF) ¶ 139. Thus, at least prior to that date, ████████████████████ ██████████████████.

Defendants concede that Dr. Strawn did not review Spinrilla's historical source code, but claim that he instead relied on other evidence in the record to support his conclusion that █████████████████████████████████████ ████████████████████████████████████████████████. Dkt. 496-1 (Defs.' Opp'n) at 6-11. But that evidence shows nothing of the sort.

*First*, Defendants extensively rely on transaction reports and emails showing how many recordings from Spinrilla were processed by the Audible Magic program during various time periods. *Id.* at 8-10. These reports would be significant if Dr. Strawn's task were merely to analyze whether Defendants implemented Audible Magic *at all* prior to October 4, 2017. However, that fact is not in dispute.[4] The disputed issues are whether and when Defendants implemented Audible Magic *effectively*. The transaction reports have no bearing on those issues because they show only how many files Audible Magic actually processed from Spinrilla. They do not address whether other sound recordings may *not* have been transmitted to and

---

[4] There is no dispute that Defendants first added a version of Audible Magic to the Spinrilla source code on December 15, 2015, and improved that implementation somewhat over time. *See* Dkt. 339 (Pls.' Reply SUF) ¶¶ 134-39.

6

analyzed by Audible Magic due to Spinrilla's ineffective coding. *See* Dkt. 496-1 (Defs.' Opp'n) at 8-10.

*Second*, Defendants note that Dr. Strawn testified in his deposition  . *Id.* at 5-6 (quoting Dkt. 278 (Strawn Dep.) 18:10-19:6). That is a circular argument: Dr. Strawn could not have noticed ▬▬▬▬▬—because he admittedly did not review the evidence that would show whether such a change took place.

Accordingly, Dr. Strawn should not be permitted to testify about the contents of Spinrilla's source code as it existed before October 4, 2017 or the efficacy with which prior iterations of Spinrilla's source code implemented Audible Magic.

## II. Dr. Strawn's Consideration Of Source Code Not Produced To Plaintiffs Renders His Opinions Untestable And Unverifiable.

During the liability phase of this litigation, Defendants obtained an order from the Court permitting them to withhold their source code from Plaintiffs. Yet Defendants gave Dr. Strawn free rein to review that code, permitting him to examine whatever parts he found relevant. Dkt. 475-2 (Strawn Dep.) 17:1-4. Defendants further permitted Dr. Strawn to apply his subjective judgment to select excerpts of source code to attach to his report. However, these excerpts did not include all of

7

the material Dr. Strawn considered in reaching his opinions. As a result, Plaintiffs are left with no way of identifying or analyzing what materials Dr. Strawn may have considered when conducting his analysis.

The Federal Rules of Civil Procedure expressly require experts to disclose all materials they "considered" when forming their opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii); *see In re Benicar (Olmesartan) Prods. Liab. Litig.*, 319 F.R.D. 139, 140-41 (D.N.J. 2017). That is true whether or not the expert witness ultimately chooses to "rely on" the materials "in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 472 (S.D.N.Y. 2016) (quoting *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 751 (7th Cir. 2005) (Posner, J.)).

Indeed, if the rule were otherwise and the proponent of expert testimony were permitted to disclose only the information supporting its expert's opinions, a counterparty would be unfairly deprived of the ability to effectively examine the basis for the testimony being offered to the jury. *Id.* For that reason, failure to disclose all materials considered by an expert—regardless of whether or not the expert relied on those materials—warrants preclusion of the expert's testimony at trial. *See, e.g.*, *Zurich Am. Ins. Co. v. Hardin*, No. 8:14-cv-775-T-23AAS, 2020 WL

1150981 (M.D. Fla. Mar. 10, 2020); *Roberts v. Scott Fetzer Co.*, No. 4:07-CV-80 CDL, 2010 WL 3546499, at *8 (M.D. Ga. Sept. 7, 2010); *Bizrocket.com, Inc. v. Interland, Inc.*, No. 04-60706-CIV, 2005 WL 6745904, at *1 (S.D. Fla. Aug. 24, 2005); *see also Mitchell v. Ford Motor Co.*, 318 F. App'x 821 (11th Cir. 2009).

That basic principle is dispositive. Indeed, Defendants **do not dispute** that Dr. Strawn considered source code that they did not disclose to Plaintiffs. Instead, Defendants generally claim that Dr. Strawn attached to his report all the source code "that was meaningful to his conclusions or to this case." Dkt. 496-1 (Defs.' Opp'n) at 11. But that is not the standard for expert disclosure. Plaintiffs are entitled to test Dr. Strawn's assumptions and analysis by reviewing all of the materials Dr. Strawn considered in forming his opinions. Plaintiffs cannot do that if Dr. Strawn is permitted to withhold some of those materials based on his *ipse dixit* determination of which materials he considered were ultimately "meaningful."

More specifically, Defendants claim that Dr. Strawn "did not rely on" certain unproduced source code affecting how users could upload sound recordings to Spinrilla. Dkt. 496-1 (Defs.' Opp'n) at 13. To be clear, Dr. Strawn reviewed that code, considered it in forming his opinions, and in fact opines about how this aspect of Spinrilla's software works. Nevertheless, Defendants now claim that Dr. Strawn was able to form his opinions by relying on other materials instead—namely, Mr.

9

Copeland's deposition testimony and Dr. Strawn's own use of the Spinrilla service. *Id*.

Critically, this argument also ignores the controlling legal standard and deprives Plaintiffs of the opportunity to fully evaluate Dr. Strawn's opinions. Indeed, in this instance, Dr. Strawn reviewed and considered the primary evidence relevant to his analysis (the source code) but relied only on secondary evidence in forming his opinion. That methodology raises a material question regarding why Dr. Strawn chose not to rely on this particular portion of code. However, Plaintiffs cannot even begin to answer that question, because the code was never produced to them. Permitting Dr. Strawn now to testify to the jury about this component of Spinrilla's software without enabling Plaintiffs to cross-examine him effectively would harm Plaintiffs' ability to litigate this case. Accordingly, such testimony should be excluded. *See Mirena*, 169 F. Supp. 3d at 472.[5]

---

[5] Defendants also accuse Plaintiffs of ignoring this Court's ruling that Defendants' source code was confidential and could be protected from discovery. Dkt. 496-1 (Defs.' Opp'n) at 15 (citing Dkt. 58 at 12). To the contrary, Plaintiffs' motion seeks only to prevent Defendants from using that discovery order as both a sword and a shield, first invoking it to hide information from Plaintiffs and then using that information at trial. *FMT Corp. Inc. v. Nissei ASB Co.*, No. 1:90-cv-786-GET, 1992 WL 240688, at *3 (N.D. Ga. June 10, 1992); *cf. Apollo v. Stasinopoulos*, No. 18-C-6475, 2021 WL 229654, at *2 (N.D. Ill. Jan. 22, 2021) (holding that a party "cannot have it both ways" by simultaneously refusing to disclose and relying upon the same evidence).

In sum, it is uncontested that Dr. Strawn considered extensive portions of unproduced source code when forming his opinions in this case. Because Defendants refused to produce this source code as the Federal Rules require, Plaintiffs are left with absolutely no way of knowing whether this code corroborates or undercuts Dr. Strawn's opinions. Permitting this testimony to be delivered violates the clear legal standard and would undermine the entire point of expert discovery. Accordingly, Dr. Strawn should not be permitted to offer opinions to the jury that were informed by his consideration of unproduced source code.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and exclude from trial Dr. Strawn's testimony regarding (1) the efficacy of Defendants' implementation of Audible Magic prior to October 4, 2017; and (2) opinions related to source code not disclosed to Plaintiffs.

This 29th day of March, 2023.                    Respectfully submitted,

JENNER & BLOCK LLP

/s/ *Andrew H. Bart*

ANDREW H. BART
(Admitted Pro Hac Vice)
JACOB TRACER
(Admitted Pro Hac Vice)
OWEN W. KEITER
(Admitted Pro Hac Vice)
KARA V. BRANDEISKY
(Admitted Pro Hac Vice)
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

LOREAL R. ROCK
(Admitted Pro Hac Vice)
1099 New York Ave., N.W. Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

TROUTMAN PEPPER HAMILTON SANDERS LLP

JAMES A. LAMBERTH
james.lamberth@troutman.com
Georgia Bar No. 431851
600 Peachtree Street, N.E.
Suite 5200, Bank of America Plaza
Atlanta, GA 30308-2216
Telephone: (404) 885-3362
Facsimile: (404) 962-6611

*Attorneys for Plaintiffs*

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

I, Andrew H. Bart, an attorney, hereby certify that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt.), which is approved by the Court pursuant to Local Rules 5.1(C) and 7.1(D).

/s/ *Andrew H. Bart*
ANDREW H. BART

## CERTIFICATE OF SERVICE

I, Andrew H. Bart, hereby certify that on this 29th day of March, 2023, the foregoing papers were electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification and a service copy of this filing to all counsel of record who have appeared in this matter.

/s/ *Andrew H. Bart*
ANDREW H. BART